UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL E. CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:11-cv-01678-MJD-JMS |
| MICHAEL J. ASTRUE Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Michael Clark requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[1]

I. **Procedural History**

Clark filed an application for DIB on November 5, 2007, alleging a disability onset date of May 24, 2006. Clark's application was initially denied on March 5, 2008 and on reconsideration on May 16, 2008. Clark requested a hearing, which was held on March 26, 2010 before Administrative Law Judge James Norris ("ALJ"). The ALJ denied Clark's application on June 9, 2010. The Appeals Council denied Clark's request for review on October 20, 2011,

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

making the ALJ's decision the final decision for purposes of judicial review. Clark filed his Complaint with this Court on December 20, 2011.

## II. Factual Background and Medical History

Michael Clark was 45 years old at the time of the ALJ's decision. He did not complete high school, completing only through the 10th grade. Clark previously worked as a slitter operator, order clerk, and production supervisor.

Clark has both physical and mental impairments, suffering from lumbar spondylosis, degenerative disc disease of the lumbar spine, arthritis, bilateral carpal tunnel syndrome, post-laminectomy syndrome, myelopathy, severe headaches, allergies, asthma, depression, anxiety, bereavement disorder and adjustment disorder.

Clark had a three-level lumbar discectomy in 1991 and anterior-posterior cervical decompression in 2000. He began seeking treatment for severe pain related to those surgeries in May 2006. Neurologist, Dr. Eric A. Potts ordered MRI and CT scans for Clark in 2006. After review of the scans, Dr. Potts recommended Clark for treatment with a pain management specialist. In August 2006, Clark began pain management treatment with Meridian Health Group ("Meridian"). He sought treatment from Meridian at least once a month through the date of his hearing, meeting with various practitioners, including Dmitry Arbuck, M.D. on June 18, 2009 and Amber Fleming, Psy.D. in February, May, October and December, 2009. Clark also underwent intravenous steroid injections with some short-term relief in alleviating pain.

Dr. Arbuck and Clark's counseling psychologist Dr. Fleming submitted Medical Source Statements, expressing their opinions about Clark's ability to do work-related activities. Dr. Arbuck submitted two statements, one in 2007 and another in 2010. In the 2007 assessment, Dr. Arbuck limited Clark's movement to sitting for only five hours at a time and that he must be able

to alternate between sitting and standing, with sitting every 45 minutes and standing and walking every 15 minutes. Dr. Arbuck further opined that Clark should be limited to lifting no more than twenty pounds occasionally. Clark could also use his hands to perform simple grasping, pushing/pulling, handling, fingering, and feeling frequently with only seldom reaching. In his 2010 statement, Dr. Arbuck limited Clark to constantly be able to change position between sitting and standing every 15 minutes, lifting up to ten pounds, and frequent simple grasping, handling, and fingering. Dr. Arbuck also added that Clark should avoid all exposure to fumes, odors, dust, gases, poor ventilation, etc. Dr. Fleming opined that Clark's chronic pain significantly interfered with Clark's concentration and attention.

### III.     Applicable Standard

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments

meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

The ALJ first determined that Clark met the insured status requirements of the Act through December 31, 2011. Applying the five-step analysis, the ALJ found at step one that Clark had not engaged in substantial gainful activity since the alleged onset date of May 24,

2006. At step two, the ALJ found that Clark had the following severe impairments: degenerative disc disease, bereavement and an adjustment disorder.

At step three, the ALJ determined that Clark did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ evaluated Clark's degenerative disc disease using the criteria of Listing 1.04 and determined that Clark lacked the significant and persistent neurological abnormalities that the listing requires. Specifically, the ALJ found that the record does not document the requisite motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, nor does the record document an inability to ambulate effectively. Regarding the claimant's mental impairments, the ALJ determined that Clark's mental impairments, alone or in combination, did not meet or medically equal the criteria of Listing 12.04. Specifically, the ALJ considered whether the "paragraph B" criteria were satisfied. To satisfy "paragraph B," the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ determined that Clark had mild restriction in his activities of daily living and social functioning, moderate difficulties in maintaining social functioning, and no extended episodes of decompensation. Thus, the ALJ found that Clark's mental impairments did not meet or medically equal Listing 12.04. Evaluating Clark's mental impairments under the "paragraph C" criteria, the ALJ found that the overall record shows that the claimant's mental impairments have not resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate.

The ALJ also found that Clark does not have a history of an inability to function outside a highly supportive living arrangement. Therefore, the ALJ determined that Clark's mental impairments do not satisfy "paragraph C."

The ALJ found that the claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except as follows: Clark should not perform repetitive bending; should not climb ladders, ropes or scaffolds; should be allowed to alternate his position at the work station between sitting and standing, that is, the job should be able to be performed while standing or seated; and the work should be simple and repetitive.

At step four, the ALJ determined that Clark is unable to perform any of his past relevant work. At step five, the ALJ determined that, considering Clark's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Clark could perform. Therefore, the ALJ determined that Clark was not disabled.

### V.   Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that Clark is not disabled.  Clark raises four arguments as to why this Court should reverse the decision of the ALJ: 1) the ALJ erred in determining that Clark's impairments did not meet or equal Listing 1.04; 2) the ALJ erred in assessing Clark's RFC; 3) the ALJ erred in finding that Clark's allegations regarding his limitations were not totally credible; and 4) the ALJ erred in his step five determination. For the reasons listed below, the Court finds that there is substantial evidence to support the ALJ's determination that Clark is not disabled.

> A. **Substantial Evidence Supports the ALJ's Finding that Clark's Impairments did not Meet or Medically Equal Listing 1.04.**

Clark first argues that the ALJ erred in determining that Clark's impairments did not meet or medically equal Listing 1.04 because the ALJ misstates the medical evidence and testimony regarding Clark's degenerative disc disease. The ALJ states in his decision that "[t]he claimant lacks the significant and persistent neurological abnormalities that this listing requires. The record does not document the requisite motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. The record does not document an inability to ambulate effectively." [R. 58-59.] The ALJ further states that this opinion is consistent with the medical experts with Disability Determination Services ("DDS") and Dr. Manders, one of the medical experts at the hearing.

M. Brill, M.D., a medical expert with DDS conducted an RFC Assessment on January 22, 2008. [R. 310-317.] In the assessment, Dr. Brill opined that Clark's motor and sensory functions and reflexes were normal. [R. 311.] J.V. Corcoran, M.D. affirmed Dr. Brill's assessment in a case analysis on May 15, 2008. [R. 412.] At the hearing, Dr. Manders opined that, although Clark's degenerative disc disease fell under 1.04, he did not meet 1.04A because, based on the record, Clark does not have sensory or reflex loss. [R. 22.] At the hearing, Clark's attorney directed Dr. Manders to an abnormal EMG to support that Clark did meet the Listing. After examining the EMG, Dr. Manders opined, that in order to meet the Listing, the EMG would need to be correlated with clinical findings which were not with the EMG.

Clark challenges the medical expert's review of the record at the hearing. Clark argues that, when Dr. Manders was directed to the abnormal EMG to support that Clark's impairment met the Listing, Dr. Manders appeared to have seen it for the first time, and, therefore, had an inadequate review of the record. Clark also references many pages in the record to show that

7

there were clinical findings that supported that Clark's impairment met the Listing. Clark therefore argues that the ALJ should have determined that Clark's impairments met or medically equaled Listing 1.04 and should have found him disabled at step three.

As far as Dr. Manders' review of the record, merely not recognizing a piece of medical evidence when directed to it, does not, by itself, suggest that the medical expert performed an inadequate review of the record. Once examined, Dr. Manders gave a very candid and detailed analysis of what the EMG represented. [R. 26-31.] Despite not recognizing the EMG, Dr. Manders showed a very good command and knowledge of the record.

Regarding Clark's references to the record, there was nothing in the record to support that Clark had the requisite motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Clark also did not direct Dr. Manders to any clinical findings at the hearing, and instead waited to address such findings with this Court. However, Clark is asking the Court to make a medical determination and find that he had neurological abnormalities, motor loss, and sensory or reflex loss, which the Court cannot do. When the record is not clear, the ALJ should consult a medical expert rather than play doctor and make his own medical judgment. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000); *Brennan-Kenyon v. Barnhart*, 252 F.Supp. 2d 681, 696 (N.D. Ill 2003). The ALJ did just that and based his decision on three medical experts who opined that Clark's impairments did not meet the Listing.

Clark also argues that the exhibits cited to by the ALJ to support his decision do not say anything about the Listings. The exhibits the ALJ cited for support were the RFC Assessment by Dr. Brill and Dr. Corcoran's affirmation of the assessment. Although not specifically stating "Listing 1.04," these exhibits deal directly with the issue of motor, sensory, and reflex loss,

which Dr. Brill opined were all normal. [R. 311, 412.] Therefore, there was substantial evidence to support the ALJ's determination that Clark's impairments did not meet or medically equal Listing 1.04.

> **B.     Substantial Evidence Supports the ALJ's RFC Assessment.**

Clark attacks the ALJ's RFC assessment from various angles: 1) the ALJ committed error by giving limited evidentiary weight to the opinion of Dr. Arbuck; 2) the ALJ erred in failing to accord substantial weight to the opinion of Dr. Fleming; 3) the ALJ failed to consider the combined impact of Clark's impairments by failing to properly discuss Clark's headaches and asthma; 4) the ALJ's RFC failed to reduce Clark's "postural manipulations" other than prohibiting repetitive bending; and 5) the ALJ misstates the progress notes from Meridian.

> **1.   There is substantial evidence to support the ALJ's determination to accord limited weight to Dr. Arbuck' opinion.**

Clark argues that it was error for the ALJ to accord limited weight to Dr. Arbuck's opinion because the ALJ believed that Dr. Arbuck's statements of Clark's limitation was an infringement "upon the province of the Commissioner of Social Security, as set forth in Social Security Ruling ("SSR") 96-5p." [R. 65.] SSR 96-5p explains how to handle medical source opinions on issues reserved to the Commissioner. SSR 96-5p, 1996 WL 374183 (July 2, 1996). Opinions from medical sources that determine whether an individual is disabled are administrative findings reserved to the Commissioner. SSR 96-5p. "Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance." *Id*.

Dr. Arbuck provided two medical source statements, both appear to be on a standard form. Neither statement provides more detail than what is asked on the form. Perhaps referring to

the second assessment, the ALJ states that "the problem with this assessment is apparent at the outset – Dr. Arbuck does not opine that the claimant is capable of full-time work activities, a limitation that almost immediately places the claimant into 'disabled' status." [R. 65.] Thus, the ALJ determined that the opinion infringed upon the province of the Commissioner and is thus entitled to limited weight with respect to the RFC determination.

The Court respectfully disagrees with the ALJ's determination that Dr. Arbuck's opinions infringed on the issues reserved to the Commissioner. Dr. Arbuck did not opine anywhere in either statement that Clark is disabled, nor do the forms ask Dr. Arbuck to render such an opinion.

Nevertheless, the ALJ provides other reasons for not giving controlling weight to Dr. Arbuck's opinion by challenging Dr. Arbuck's role as a treating source. A treating source's medical opinion must be given controlling weight if the opinion is well-supported and not inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996). However, the ALJ determined that Dr. Arbuck is not a treating source as defined in 20 C.F.R. 404.1502. The ALJ stated that Dr. Arbuck's opinions were considered, but could not be given great weight because "[w]hile Dr. Arbuck may oversee the claimant's treatment and have access to all records, only one progress note in the record has his signature. It does not appear he has a very extensive 'examining relationship' with the claimant, perhaps the reason he does not cite clinical findings." [R. 65.] Clark does not dispute the number of times he met with Dr. Arbuck and even indicates in his brief that out of seven practitioners and almost 40 visits, he only saw Dr. Arbuck once. Brief for Plaintiff at 5-6, *Clark v. Astrue*, No. 1:11-cv-01678-MJD-JMS (S.D. Ind. July 24, 2012), ECF No. 18 [hereinafter Dkt. 18]. Here, the ALJ provided a glimpse into his reasoning and built an accurate and logical bridge from the evidence to support

10

his determination that Dr. Arbuck's opinion should not be given great weight. *See Dixon*, 270 F.3d at 1176. As such, substantial evidence supports the ALJ's determination to give limited, rather than controlling, weight to Dr. Arbuck's opinions.

### 2. Substantial evidence supports the ALJ's determination not to accord substantial weight to the opinion of Dr. Fleming.

Although not discussed in the ALJ's RFC assessment, the ALJ considered Dr. Fleming's treatment of Clark in his step three analysis, including the medical source statement she provided. [R. 59.] Dr. Fleming indicated that Clark would have poor to no ability in maintaining attention/concentration, which the ALJ acknowledges. [R. 59, 461.] However, the ALJ provides logical reasoning for not according much weight to Dr. Fleming's opinions including that there were no mental status examination findings in her notes. Nonetheless, Dr. Fleming's findings are not inconsistent with those of medical expert Dr. Olive, who also found that Clark's chronic pain would limit his concentration. The ALJ relied on Dr. Olive's opinions in making his RFC determination that Clark be limited to work that is simple and repetitive to accommodate "the claimant's headaches and their impact on his concentration." The ALJ properly articulated his reasons for not according substantial weight to the opinion of Dr. Fleming. Because Dr. Fleming's opinion is not inconsistent with the RFC determination, substantial evidence supports the ALJ's assessment of the RFC.

### 3. The ALJ properly considered the combined impact of Clark's impairments.

Clark next argues that the ALJ failed to consider the combined impact of his impairments by failing to properly discuss Clark's headaches and asthma. The ALJ specifically referred to Clark's headaches and included it as a factor when assessing his RFC. [R. 65.] Although asthma is only acknowledged, and not discussed, in the ALJ's decision, the ALJ need not discuss every

11

piece of medical evidence. *Carlson*, 999 F.2d at 181. Even taking their combined impact into consideration, Clark does not point to any objective medical evidence that suggests a different assessment of the RFC. The RFC determination is consistent with the testimonies of the medical experts who had a chance to review the entire record; those experts did not postulate any further limitations. Therefore, the ALJ properly considered the combined impact of Clark's impairments.

        **4.**   **Substantial evidence supports the limitations set by the ALJ in the RFC.**

Clark argues that the ALJ's RFC assessment failed to reduce Clark's "postural manipulations" other than prohibiting repetitive bending. [Dkt. 18 at 17]. Clark likely refers to the limitations set forth in the RFC. In support, Clark refers to Dr. Arbuck's medical source statements and argues that they "clearly" limit Clark to less than sedentary work. [Dkt. 18 at 17.] Neither medical source statement clearly or specifically limits Clark to less than sedentary work. Even if they did, as discussed above, the ALJ properly supported his determination to not give controlling weight to Dr. Arbuck's opinion. Clark does not point to any other evidence to discredit the ALJ's RFC determination. Therefore, substantial evidence supports the ALJ's RFC assessment regarding Clark's limitations.

        **5.**   **Substantial evidence supports the ALJ's RFC, despite the ALJ's misstatements of the progress notes from Meridian.**

Clark argues that the ALJ misstates that the progress notes from Meridian "contain subjective reports, but no physical examination findings." [R. 64.] After reviewing the record, the Court agrees that there were physical examination findings from Meridian on many pages of the record. Nevertheless, if the ALJ's statements regarding the progress notes were removed, there would still be substantial evidence to support the ALJ's RFC determination. Nothing in the

progress notes is inconsistent with the ALJ's findings. As discussed above, three medical experts have had a chance to review the record regarding Clark's degenerative disc disease and his limitations. Dr. Manders testified at the hearing and the ALJ made the RFC assessment based on Dr. Manders' testimony. Therefore, substantial evidence supports the ALJ's assessment of Clark's RFC.

        **C.**       **Substantial Evidence Supports the ALJ's Credibility Determination.**

Clark next argues that the ALJ erred in finding that Clark's allegations regarding his limitations were not totally credible. Clark argues that the ALJ gave insufficient consideration of the standards set forth in 20 C.F.R. 404.1529 and *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010). Specifically, Clark attacks the ALJ's "boilerplate" language used in the decision. The Commissioner argues that the Seventh Circuit, in *Shideler v. Astrue*, 688 F.3d 306 (7th Cir. 2012), has recently determined that such boilerplate language is not automatically fatal in determining credibility, so long as the ALJ has adequately evaluated the claimant's credibility. Clark also argues that the ALJ ignored his work history.

*Parker* and *Shideler* both stand for the proposition that boilerplate language without adequate consideration and a detailed analysis that builds a logical bridge between the facts and the conclusion when making a credibility determination is reversible error. *Parker*, 597 F.3d at 921; *Shideler*, 688 F.3d at 312. The difference between the two cases is that *Parker* demonstrates when boilerplate language is inadequate, and *Shideler* demonstrates when boilerplate language is not fatal. In *Parker*, the court determined that such boilerplate language without mentioning "highly pertinent evidence . . . or that because of contradictions or missing premises [the ALJ's decision] fails to build a logical bridge between the facts of the case and the outcome" is reversible error. *Parker*, 597 F.3d at 921.

The case at bar is most analogous to *Shideler*. In *Shideler*, the claimant argued that the ALJ failed to consider his prior work and medical histories and unreasonably discredited claimant's testimony that he needed to lie down several times a day. *Shideler*, 688 F.3d at 311. The Seventh Circuit found that this argument was unpersuasive, noting that the ALJ considered a broad range of factors, but specifically focused on the claimant's medical history. *Id*. These factors included the claimant's medical history, treatment history, daily living activities and the limitations about which he testified, and factors that aggravated his pain and factors that alleviated his pain. *Id*. The ALJ also considered the claimant's work history and specifically found that he had not engaged in substantial gainful activity since his alleged onset date. *Id*. The court found that the "ALJ took these factors into account when making her decision and granted [the claimant] numerous restrictions, finding that he was capable of performing only a restricted range of sedentary work." *Id*. "The ALJ connected [her] conclusion to the record evidence in a detailed analysis, belying any claim that she failed to build a logical bridge between the evidence and her conclusion." *Id*. at 312. The court acknowledged that the ALJ's decision was not perfect, noting that the decision had a considerable amount of boilerplate language and the ALJ could have referenced the statements that were not credible. *Id*. However, the court reconciled this by stating that "the ALJ's credibility findings need not specify which statements were not credible" and "despite these shortcomings, the ALJ adequately evaluated [the claimant's] credibility, and we see no reason to reverse." *Id*. (citing *Kittelson v. Astrue*, 362 Fed.Appx. 553, 557 (7th Cir. 2010) ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'")).

As in *Shideler*, the ALJ in the case at bar properly evaluated Clark's credibility. In a very detailed analysis that specifically focused on Clark's medical history, the ALJ considered a broad

range of factors including Clark's treatment history, daily living activities, factors that aggravated his pain, and factors that alleviated his pain. [R. 60, 62-63.] The ALJ also considered Clark's statements regarding his pain and medication. [R. 62-64.] Clark argues that he is entitled to some assumption of credibility when he claims an inability to continue functioning in the work place and that the ALJ ignored Clark's "excellent" work history. [Dkt. 18 at 19.] The ALJ clearly accorded some credibility to Clark's claims of inability to continue functioning in his past positions as he not only made a finding that Clark is unable to perform any past relevant work, he also granted Clark numerous restrictions, finding that he was capable of performing only a restricted range of sedentary work. Like *Shideler*, this decision is not perfect. There is a considerable amount of boilerplate language in the conclusion. Nevertheless, the detailed analysis of Clark's RFC and credibility preceding the conclusion built an accurate and logical bridge from the evidence to the conclusion. Other than ignoring Clark's work history, Clark does not argue that, like in *Parker*, the ALJ's decision lacked highly pertinent evidence or that there were contradictions or missing premises. Therefore, because the ALJ's credibility determination was not patently wrong, the Court upholds the ALJ's credibility determination.

   **D.**  **Substantial Evidence Supports the ALJ's Step Five Determination.**

  Finally, Clark argues that the ALJ did not meet the Commissioner's burden at step five to establish the existence of alternative work Clark could perform despite the impairments and resulting limitations. Specifically, Clark argues that the ALJ's hypothetical question to the vocational expert was inadequate, and, alternatively, if it was adequate, the ALJ did not resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

Clark's argument regarding the inadequate hypothetical question is an extension of the argument challenging the ALJ's RFC determination. The hypothetical question was based on Clark's age, education, work experience, and RFC. Clark challenges the limitations imposed in the RFC. As discussed above, the ALJ did not err in his RFC determination, therefore, the hypothetical question was adequate as required by SSR 00-4p.

The vocational expert determined that considering Clark's age, education, work experience, and RFC, there were jobs in significant numbers that existed in the national economy that Clark could perform. The vocational expert testified that Clark would be able to perform the requirements of representative occupations such as reception and information clerk and general office clerk. The ALJ found that the vocational expert's testimony was consistent with the information contained in the DOT. However, Clark argues that the vocational expert's testimony is not consistent with the DOT.

The ALJ's RFC determination limited Clark to sedentary work that is simple and repetitive. Clark argues that the positions of receptionist (DOT 237.367-038) and information clerk (DOT 237.367-022) have a specific vocational preparation time ("SVP") of 4 which necessitate the performance of tasks that exceed those required by simple repetitive work. Clark also argues that the position of general office clerk has an SVP of 3, but is a "light" job, as opposed to sedentary work. Clark further argues that the ALJ did not resolve the inconsistencies as required by SSR 00-4p.

SSR 00-4p designates a skill level with a corresponding SVP: unskilled work corresponds to an SVP of 1-2 in the DOT; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). SSR 00-4p also imposes an affirmative responsibility on the ALJ to inquire about possible conflicts between the

vocational expert's testimony and the DOT and to obtain a reasonable explanation for any apparent conflict.[2] SSR 00-4p; *Nicholson v. Astrue*, 341 Fed.Appx. 248, 254 (7th Cir. 2009); *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

In comparing the DOT to the vocational expert's testimony, the Court finds there was no inconsistency regarding the vocational expert's testimony that jobs existed in the occupations of reception information clerk. The vocational expert did not, as Clark suggests, separate this into two separate jobs; reception information clerk is a broad category in the DOT. Under this category, there are two specific job titles that met the RFC of unskilled, sedentary work: call-out operator, DOT 237.367-014; and telephone quotation clerk, 237.367-046. Therefore, there was no inconsistency.

The Court finds that there was inconsistency between the vocational expert's testimony and the occupation of general office clerk. Unlike reception information clerk, general office clerk is not a broad category, but a singular job title. An SVP of 3 and light work associated with the general office clerk position appears to conflict with the vocational expert's testimony that the position was limited to an SVP of 1-2 (unskilled) and sedentary work. The ALJ had an affirmative duty to inquire about possible conflicts, which he did. The ALJ asked the vocational expert if there were any inconsistencies and the vocational expert replied that there were not.  [R. 46.] Clark's counsel, who was present at the hearing, also never identified any inconsistencies when that question was asked and answered.  Therefore, the ALJ did all that was required of him. *Nicholson*, 341 Fed Appx at 254 (explaining that "[t]he ALJ did all that S.S.R. 00-4p required" when he asked the vocational expert "to specifically point out any inconsistencies between the vocational expert's testimony and the DOT," which the vocational expert "did not

---

[2] Clark's argument may not be valid as he does not argue that the conflict was "apparent," as is required. It appears the alleged conflict was not "apparent" at the hearing as neither the ALJ nor Clark's attorney made reference to any conflict during the hearing.

17

mention any such inconsistencies, and [claimant's] counsel never identified any."). However, even if the ALJ did commit error, the error was harmless as the outcome would still be the same: there were jobs that existed in the economy that Clark could perform, e.g., call-out operator and telephone quotation clerk. *Id*. Therefore, substantial evidence supports the ALJ's step five determination.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Clark is not disabled and the Commissioner's decision is **AFFIRMED.**

Date:   01/25/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph W. Shull
jshull@joeshull.com

Jean C. Owen
LAW OFFICE OF JEAN C. OWEN
jeano@ssdla.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

18